Vishwanathan Rudrakumaran May it please the Court, I represent Mr. Balasundaram Thraiyappah in this matter. There are three factual basis, there are three factual predicates of this case. The first factual predicate is what happened to him in Sri Lanka, his past experience. He claimed asylum based on that factual predicate. That is an independent distinct predicate. The second factual predicate, he is claiming asylum and protection under the Convention Against Torture on account of being a Tamil. That is entirely a distinct independent claim. It has nothing to do with his past experience. The third factual predicate, what he is claiming is asylum and protection under the Convention Against Torture on account of putative failed asylum seeker. This is also completely a distinct claim. So there are three distinct claims. So regarding the first one, let me talk about the asylum and protection under the Convention based on account of Tamil. What the agency did was, because the agency made an adverse credibility finding pertains to his past experience, they simply said, no, the whole thing is over, you cannot claim any kind of relief due to the adverse credibility finding. But this case is a little bit interesting, Your Honour. The court did issue an opinion on Arunanthi case a couple of months ago. In that case, Your Honour, the court emphasised that the agency made a blanket adverse credibility finding. A blanket adverse credibility finding in that case. So due to that, the court said, there is no subjective element. So you cannot claim asylum even though it is a distinct claim. And then the court said, but the agency has to adjudicate the CAD claim. Because the CAD claim, you don't need the subjective element. So here also in this case, what happened was, interestingly, the court made a partial credibility finding. Unlike Arunanthi, here the court made a partial credibility finding. The court said, yeah, he is a Tamil. They made that finding. This is similar to the Second Circuit case in Paul v. Gonzalez. In that case also, the court initially made an adverse credibility finding pertains to what happened to him in Pakistan. But then the court made a finding that he was a practicing Christian. They accepted that one. So subsequently when a motion to reopen was filed, the Second Circuit said that the prior adverse credibility finding does not do in this case. So here also the court made a partial credibility finding like Paul v. Gonzalez. Arguing though, if the court thinks this is a blanket credibility finding, it has nothing to do with his CAD claim. Even if the court says that the agency made a blanket adverse credibility finding, it has nothing to do with this CAD claim based on the Tamil, on account of being a Tamil, because we don't need a subjective element. Then I go to the second factual basis, Your Honor. So in fact, the government filed the 28-J letter about Gotra case, Your Honor. The Gotra case, there was only one factual basis, even though there was some independent evidence. The board and the court said those evidence were filed in connection with the burden of proof of his claim based on past experience. There was no independent claim in Gotra. There was only one factual basis, but here there are three distinct factual basis. So regarding the first, on account of Tamil, even if the court thinks there was a blanket adverse credibility finding, it doesn't do his claim for protection under the Convention Against Torture. Then I go to the second factual basis, on account of being a putative failed asylum seeker. Interestingly, the BIA did not dismiss that claim based on the adverse credibility finding. The BIA said, well, this claim was not well developed, so we are not going to remand it. BIA did not say because of adverse credibility finding that we are dismissing this claim. So our position, Your Honor, that yes, you will remand it because that issue was raised by the attorney during his closing argument before the immigration judge. He put some Canadian documents to show that the failed asylum seekers are being tortured upon their return. He put that in the record and in fact he told the judge. He also put a published opinion from the 11th Circuit precisely on this issue of failed asylum seekers and he told the judge. But the judge completely did not address it because the judges seem to be of the opinion that since there is an adverse credibility finding, nothing could prevail. So the board said our position, Your Honor, it was brought to the attention of the court and as long as the core of the issue is being brought to the attention of the court, even if it is not well developed, the court has to address it. It is a difference between completely failing to raise the issue and then raising the issue in a perfect manner. So here the agency did not address the issue. And even based on the agency's analysis, the adverse credibility finding has nothing to do with this. So these are all independent claims. Then I come to the third aspect of this claim, the third factual predicate, that based on whatever happened to him in Sri Lanka, we are not saying just throw the credible fear interview out of the window. We are not arguing like that. What we are saying is the credible fear interview and the asylum testimony are not on par. What we are arguing is the credible fear interview and his asylum application are not on par. Why? Because the credible fear interview was designed to elicit some basic information. It was not designed to elicit each and every detail of the claim. Only the purpose of the credible fear interview is to see whether there is a significant possibility whether he can develop a claim. So that's what we are saying. We are not saying just you throw the credible fear interview out of the window. We are saying that we'll exercise some caution. That's what the court said, exercise some caution when you take into account the credible fear interview. And with credibility, in addition to that, what we are saying is the judge is required to ask for some perceived inconsistency and explanation. If there is a perceived inconsistency, the judge should have asked him what, why. He never followed that. In fact, the board in matter of AAS said if there is an inconsistency, the judge has to ask for an explanation, and then he has to evaluate whether there is a reasonable explanation for the alleged or perceived inconsistency. The judge did not do anything. So for credibility finding, our position regarding the third aspect, Your Honor, the judge, the court, the agency erred in two things. First, they relied heavily, heavily on credible fear interview. In fact, it seems to be solely on credible fear interview. And the second point, Your Honor, the agency did not follow the requirement articulated by the agency itself in matter of AAS asking for an explanation, Your Honor. Those are my questions at the moment, Your Honor. If there's any questions, I'll come back and argue during the rebuttal, Your Honor. Thank you, counsel. Thank you. Mr. Robbins? May it please the court. My name is Jonathan Robbins. I'm here on behalf of Merrick Garland, the respondent of Hilly in this matter. Good morning to all of you. The primary issue in this case is whether the record compels reversal of the agency's adverse credibility finding. And of course, the secondary issue in this case is really a response to the petitioner's argument about the board's independent obligation to assess evidence with respect to cat protection. With respect to the adverse credibility finding here, the record does not compel reversal of the agency's adverse credibility finding. There is substantial evidence in the record to support the finding in that regard. I think the most notable inconsistency in this case is the evolution of petitioner's claim to the injuries that he claimed he suffered. In his credible fear interview, he claimed that he received no injuries. And that claim trained dramatically in his testimony when he testified to a number of injuries and to specific treatment that he had received with respect to those injuries. Now when an immigration judge sees that type of evolution in the claim, it's reasonable for an immigration judge to be concerned that the claim is being embellished or is otherwise not on the level. The immigration judge also pointed out that with respect to some of the threats that petitioner claimed that he had received, that there was an increase in the severity of the threats from the beginning of the claim to the end of the claim. The immigration judge also noted that there was an implausibility with respect to the petitioner's claim. He had claimed that his community was very small and tight-knit, but that he hadn't heard of anybody else receiving similar treatment to him with respect to this. Does this apply to both asylum and the cat, or just one? In this case, it applies to all of them, because the claim that underlies the cat claim here is intertwined with the ultimate claim. In other words, you have to show— Are you distinguishing Arulnathi on that basis? Yes, Your Honor. Last week we filed a 28-J putting the court on notice of the court's case in Arulnathi, and in that letter we specifically distinguished this case. The court in Arulnathi held that the board does have an independent obligation to assess a cat claim, even if there's been an adverse credibility finding, and we don't dispute that point. But the court also had to grapple with other cases in which, in published decisions, where it had assessed a case for an adverse credibility finding and found that the adverse credibility in those findings did support the denial of cat protection. And the way that the court distinguished Arulnathi from those other cases is it pointed out that in those other cases, specifically the Gotra case, which the board cited in this case in its decision, it said that in the Gotra case the individual hadn't explained or hadn't argued how the independent evidence independently established the claim, whereas in Arulnathi they did. And I would turn Your Honor's attention to the brief that Petitioner filed with the board in this case. If you look at the section of the brief, which is located on page 29 of the record, it's a two-page challenge to the denial of cat protection. In that brief, the petitioner raised two arguments. First, he argued that the cat finding should be overturned because the adverse credibility finding was wrong. So in other words, and the board did address that by explaining why it didn't find any error in the immigration judge's adverse credibility finding. And then he also argued that the case should be remanded based on his status as a returning asylum seeker because of his Tamil ethnicity. And the board also responded to that argument by pointing out that he had not properly developed that claim in proceedings below. So he didn't make the claim that was made in Arulnathi and that the court distinguished from the Gotra case. In other words, he didn't make the argument. And so that's why this case falls in the line of cases like the Deyo case and the Gotra case and the Effe case rather than the Arulnathi case. Now I do want to respond to the petitioner's argument because he says that, you know, well I made this claim and they found that that wasn't credible, but I have these independent bases for asylum for my status as a failed asylum seeker. Now the problem with that is that he didn't develop that claim before the agency. And I would refer your honors to page 143 of the record. The immigration judge expressly, after the petitioner had gone through this story about the incidents that he had with the Sri Lankan army and the CID unit, the immigration judge asked him, do you have any other reason why you fear that they are going to harm you, the Sri Lankan army forces? And the petitioner responded, no, this is the only reason. Now at no point in the proceedings did he say, or did the petitioner actually claim that he feared returning as an asylum seeker. In his asylum application where it asks all the reasons why you fear returning to harm, he provided a statement, no mention of fear as a status as a returned asylum seeker. No pleadings filed with the court indicating that he feared return on that basis. Told the immigration judge that the only reason was based on the claim regarding the incidents that he encountered with the Sri Lankan army. So it's not an error for the immigration judge to assess the claim that he asked the immigration judge to assess. If he had said that he had feared a basis as a returning asylum seeker, well then the immigration judge would have had to address that. But now the petitioner has countered that by suggesting that he submitted background reports which talk about failed asylum seeker status. He submitted a lot of documents, which tends to happen in asylum cases. People submit all types of country conditions evidence which speak to all different types of problems in the country. But if you don't put the immigration judge on notice that you want him to assess a specific fear, the immigration judge is going to assess the fear that you assert and not address the ones that you haven't asserted or is specifically disavowed. He specifically stated that the reason that he gave with respect to the incident involving the memorial event was the only basis for his asylum. Now the petitioner's counsel, in closing argument, did try to clean that up. And he tried to suggest that the petitioner feared harm because he would be considered illegally returning to Sri Lanka. And in fact, if you look at some of the documents that he submitted with respect to the treatment of returnees to Sri Lanka, and I would specifically direct your honors to the UNHCR report and these Canadian documents that the petitioner mentioned in his opening statement. When it discusses the treatment of returnees upon arrival to Sri Lanka, it talks about one of the major concerns of the Sri Lankan government are people who've left the country illegally. It starts by detailing the offense for illegally leaving the country, and it talks about how the government essentially tries to screen people to see whether they've left illegally. But the petitioner testified on page 144 of the record that he didn't leave illegally. He says that he used his own passport to leave Sri Lanka. He stated that he didn't have any problems leaving at the airport. So it's not even clear the petitioner would fall into the category of people that would be, that would fall into this treatment in the documents that he submitted. And that's really sort of the problem. Because he didn't develop any claim with respect to his status as a returned asylum seeker, there's nothing here to link this background evidence to his claim, or for the immigration judge to have thought that that would be linked to his claim. So, again... What does the record show about whether he received torture before he left Sri Lanka? Well, the immigration judge found that the treatment that he suffered wasn't sufficient to rise to the level of persecution in the asylum and withholding context. Now, treatment which isn't sufficient to rise to the level of persecution by its nature is not going to be sufficient to constitute torture, because torture is considered a more extreme form of harm than that suffered for persecution for asylum withholding and removal. Now, he did undergo one incident in which he was beaten. But the immigration judge pointed out and cited to a plethora of Fifth Circuit case law which talks about these types of isolated incidents, and that persecution and torture are considered very extreme forms of conduct, particularly torture. Torture is a very extreme form of conduct. And so, even though he was roughed up by the police on this one event, the immigration judge did find that that wasn't sufficient to rise to the lower level of persecution in this case. So, even though the immigration judge didn't make a specific finding with respect to the harm as to torture, it necessarily follows as a legal matter that if the harm wasn't sufficient to rise to the level of persecution, it couldn't be sufficient to rise to the level of past torture. So, that would mean that the harm that Petitioner received in this case, although deplorable, I don't mean to suggest it's some sort of acceptable harm, it's not as a legal matter sufficient to rise to the level of torture. So, in sum, getting back to the adverse credibility finding here, the adverse credibility finding, because that was the only claim that the Petitioner advanced in this case and didn't develop those other claims, there's no error in the agency's decision in denying all the applications for relief on the basis of the adverse credibility finding. That story that he told to the immigration authorities was the only basis for the different claims that he made, or for the different applications for relief and protection that he made. And that would square this case with the Arunanthi case, and it really falls more on the line of the cases like Efe, the Deyo case, and the Gotra case. And the Gotra case, again, specifically cited too by the board in this case. So on the Catt claim, are you saying an adverse credibility determination is sufficient to deny the claim? Just, you can, you find, you make an adverse credibility determination, it's over, done, with the Catt claim? It can be, Your Honor. It depends on the nature of the claim. If the Petitioner makes an argument, which he did not do in this case, that the evidence independently establishes their risk of torture, and can show that through the evidence, then yes, you are correct. The board has an independent obligation to assess that evidence. But the problem is the Petitioner didn't advance it. Did he offer the human rights reports and different articles describing country conditions, those kinds of things? He did. Wasn't that evidence in addition to what led to this adverse credibility determination? Yes. Well, the immigration judge actually analyzed that evidence at length, and he, the immigration judge said, if I had found his story of what had happened to him, if I had found that true, I would think the objective evidence in the record combined with his testimony about being individually targeted, then yes, that would have been sufficient to establish the claim. So the immigration judge said that had he found his story credible and believed what had happened to him, then he would have granted asylum and withholding of removal. So the agency, or at least the immigration judge here, didn't fail to analyze the country report's evidence. There's, in fact, his decision details a lot of those reports at length. But the problem is, is that in his appeal to the Board, the only challenge to the cat protections the Petitioner made were, one, the adverse credibility finding, and he argued that his case should be remanded to assess the claim that he never developed. He didn't make that claim that was made in Arlenothe about the independent evidence by itself specifically establishing his claim for relief. And so the Board's decision, understandably, responded to the two arguments he made. It responded to the adverse credibility finding, and it responded to his claim regarding the Petitioner's pointing out that he hadn't developed that claim, right? His counsel tried to fix it in closing argument, but a statement of counsel does not constitute evidence. What constitute evidence are testimony, the asylum application, statements that the Petitioner might provide in an affidavit or in written pleadings to the immigration judge. At no point in any of the documentation or testimony did he even claim that he feared his returning as an asylum seeker, and he testified that he had left the country legally, which, again, doesn't match up with some of the evidence about the treatment of returnees, which talks about how the Sri Lankan government is focused on looking whether the person left illegally. The Petitioner didn't claim that he left illegally. So... Well, is it your position that the evidence and testimony about torture was not separate from the other, but was all in the same testimony about his treatment? Yes, Your Honor. In this case, yes, because at the end of the day, if you want to establish a basis for cat protection, you have to show that you're at some risk of individualized harm, unless you can show that the situation in the country is so systematic, that essentially the documents themselves would show a more than 50% chance of torture, which I don't think the documents do here. The immigration judge, when he was assessing it, at least in the asylum and withholding cat context, found that there was no evidence of a pattern and practice of persecution. So without some... His testimony was really the only thing that could link his particular circumstances to the abuses that occur in the home country. And so without that showing of an individualized risk of targeting, if you don't credit what he claims that happened to him, there's not enough there to establish the probability of torture that you're going to need to establish in order to make out that type of claim. In this case... That wasn't true in Errol Nanthi. I'm sorry, yeah? You're saying that wasn't true in Errol Nanthi? Well, in Errol Nanthi, apparently the petitioner had made the argument that the evidence of record was sufficient on its own to establish the clear probability of torture. But again, as I would direct, Your Honor, the court had to grapple with a lot of prior case law where there had been an adverse credibility finding and the court had found that sufficient to deny a cat claim. And the way it distinguished those other cases is it pointed out that the petitioner in those cases, the applicant in those cases, had made out that case. If you look at the petitioner's appeal to the board, he didn't make that case. He made those two arguments regarding adverse credibility finding and asking that the case be remanded to assess a claim that he never developed. He didn't make that independent evidence analysis and that's why this case... And so the cases that would control are the Gotra case, for example, where in that case too, the argument was that the board didn't sufficiently consider the independent evidence in that record, didn't consider the background documentation. The court rejected the argument in that case because the petitioner hadn't advanced that argument. Same is true here. So, unless there are any other further questions by the court, we would respectfully submit that the record does not compel reversal of the adverse credibility finding and that the petitioner... The board didn't abuse its discretion in refusing to remand the case based on a claim that petitioner did not advance below. So with that, we would respectfully ask that the court deny the petition for review. Thank you, counsel. Thank you for your time, Your Honors. Rebuttal. Your Honor, the government's argument finally boils down to the fact that there is an adverse credibility finding, so that's why they deny all claims. But then they cited the cases from this court, but as I argued earlier, Your Honor, in all cases, there is one factual predicate. Here there are distinct factual predicates. And then the government argued, well, the petitioner did not say to the judge that he also fears because of being a Tamil or being a failed asylum seeker. Maybe argument will take that for granted. But that has an impact of relevance only for the asylum claim, because for the asylum claim only you need the subjective element that the applicant must have stated. But with respect to the torture convention, Your Honor, you don't need anything from the applicant. The applicant can simply sit there and say nothing. But the judge has an obligation to analyze based on the record. So even if he accepts the petitioner did not claim, the judge has an obligation. In fact, the attorney argued, the government was right, the attorney's argument is not evidence. But he argued the legal basis of the claim, that's what his job. That's what his job to argue the legal, we can't expect the applicant to argue the legal basis of his claim. So the attorney argued the legal basis for the claim, and he said, and he said he distinguished in his closing statement before the judge, based on past experience, then he emphasized and also he said he distinguished those two claims. So even if the court said, agrees that there's no asylum claim because there's no subjective element, then the question comes, the torture convention, even without the subjective element you can, the court should grant. Then the government argues that the torture convention, well, the background materials says that if you come with a regular passport, there's no problem. The UNHRC report says there's no problem. But with all due respect, that's not for the job of the government attorney. Even with all due respect, the court cannot make that finding. The court has to simply send back to the agency to make that finding. That's why we argue. That's why we said, send it back to the agency to make a finding, whether the guy comes with a regular passport and the UNHRC saying this, still whether he has a claim. That's what we are arguing. So whether the court need not to go into the details of the record to say whether he will be tortured or he will not be tortured yet, Your Honor. In the CAT context, did the BIA consider the country conditions in evidence? The country condition, Your Honor, with respect, the State Department, India. As to CAT. Yeah, regarding the torture, Your Honor, the State Department report, they cited the Human Rights Council report and saying there's torture there. But the State Department report did not address the torture of failed asylum seekers. But regarding the torture of failed asylum seekers was put forward by the Canadian government, that report. But our position, Your Honor, that's for me or for the government attorney, with all due respect, not for this court to find out whether there's going to be a torture or not. That's for the agency. Had the agency come and said, well, we review the record, that there won't be any torture to this guy, then that would have been fine. But they did not do that job, Your Honor. That's what our position is. So even if he threw the asylum claim out, he still has a viable, the CAT claim, which the agency failed to adjudicate, Your Honor. I do not want to go into the credibility which I have argued in my brief, and the government also did not address that issue, whether the agency has an obligation to ask for an explanation when there are inconsistencies in the record, whether the court has an obligation to ask for the explanation for the inconsistency, the government did not address that issue. So our argument, Your Honor, that is an error made by the agencies, therefore the case should be sent back to the agency. Thank you, Your Honor. Thank you. All right. The court will take this matter under advisement.